**TEXAS HEALTH INSURANCE
RISK POOL, Petitioner,**

v.

Sharon B. SIGMUNDIK, Benjamin J. Sigmundik and Zachary P. Sigmundik, as the Sole and Legal Heirs and Beneficiaries of Thomas M. Sigmundik, Deceased, and/or of the Estate of Thomas M. Sigmundik, Deceased; Otto L. Monecke and Virginia L. Monecke, Respondents.

No. 09–0772.

Supreme Court of Texas.

May 28, 2010.

Larry Parks, Mitchell Williams Long Burner, Austin, TX, for Petitioner.

Jeff Rex Steinhauser, Attorney at Law, Flatonia, TX, Peggy S. Supak, Fayette County Courthouse, La Grange, TX, Max E. Roesch, Max E. Roesch, P.C., Giddings, TX, Gordon A. Holloway, Giorgio 'George' Caflisch, Holloway, Rowley & Caflisch, P.C., Houston, TX, for Respondent.

PER CURIAM.

This health-insurance subrogation case turns on two rudimentary principles:

1. A trial court abuses its discretion when it invokes the equitable "made whole" doctrine to circumvent a party's contractual right to subrogation.

2. A trial court may not cut a party out of a settlement where the settlement purports to resolve that party's claim, and the party participated in the proceedings and requested an allocation.

As the court of appeals' decision runs counter to both these principles, we reverse its judgment and remand to the trial court for further proceedings consistent with this opinion.

\*　　\*　　\*

Thomas Sigmundik was injured in an oilfield explosion and spent 52 days in the hospital before succumbing to his extensive injuries. His insurer, the Texas Health Insurance Risk Pool, paid $336,874.71 in medical expenses resulting from the accident.[1]

After Sigmundik's death, his wife filed a negligence action on behalf of herself, her two minor sons, and Sigmundik's estate. The Risk Pool intervened, arguing it was "subrogated to the rights of Mr. Sigmundik and his estate" based on this express subrogation provision in Sigmundik's health-insurance policy:

We will be subrogated to all rights of recovery which any person may have against another party for all benefits paid by the Pool which were incurred by the Insured Person as a result of the negligence or misconduct of another party. Our right to repayment shall be a lien against any recovery by the Insured Person whether it be by judgment, settlement, or otherwise.

The negligence suit settled for $800,000. Mrs. Sigmundik signed on behalf of all settling plaintiffs (herself, her two children, and the estate), but the settlement agreement did not specify how the funds would be allocated. The trial court held a bench trial to allocate the settlement and awarded the entire $800,000 to the Sigmundik family, finding it had not been "made whole" by the settlement. The trial court concluded that equitable principles apply to the Risk Pool's subrogation claim and that where "a subrogation claim[ ] works an injustice, it shall not be allowed."

---

1. The Risk Pool is a quasi-governmental entity that exists to provide affordable insurance to Texans who have pre-existing conditions or other high-risk conditions that might prevent them from obtaining insurance otherwise. *See* TEX. INS CODE §§ 1506.101, .152.

For support, it cited our decision in *Ortiz v. Great Southern Fire and Casualty Insurance Co.*, 597 S.W.2d 342, 343–44 (Tex. 1980), which held an insurer may be denied *equitable* subrogation when the injured parties are not "made whole"—that is, fully compensated. Noting the Risk Pool's solid financial position, the trial court found that allowing subrogation "would work a financial hardship" on Sigmundik's family, but disallowing subrogation "would not work a financial hardship" on the Risk Pool. The trial court thus allocated everything to Sigmundik's widow and two children and nothing to the estate (and consequently nothing to the Risk Pool, which as subrogee contractually stood in Sigmundik's shoes). The court of appeals affirmed. 315 S.W.3d 67.

▇▇▇▇ Subrogation comes in three varieties: equitable, contractual, and statutory. Shortly before the court of appeals issued its decision in this case, we issued *Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex.2007), which held that the "made whole" doctrine does not apply where, as here, "the parties' agreed contract provides a clear and specific right of subrogation." *Id.* at 651. As we indicated in *Fortis Benefits*, equitable doctrines conform to contractual and statutory mandates, not vice versa. *Id.* at 648. We further clarified that "contract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement." *Id.* at 650.

▇▇▇▇ *Fortis Benefits* eliminated the basis for the trial court's judgment in this case, as Ortiz dealt with equitable subrogation, not, as here, contractual subrogation. Nonetheless, the court of appeals affirmed the trial court's judgment, appearing to rely in part on the "made whole" doctrine but without expressly claiming to. 315

S.W.3d at 70 (holding that the trial court did not abuse its discretion since there were not enough settlement funds to compensate Sigmundik's wife and sons, and thus, in the words of Sigmundik's wife, "there is nothing left for [the estate]" (alteration in original)).

▇▇▇▇ Under *Fortis Benefits*, the "made whole" doctrine is inapplicable in this case. The Risk Pool has a contract-based lien on any recovery by Sigmundik's estate, and the amount of repayment sought, $336,874.71, was not contested. The rub is this: the contractual "lien against any recovery" means nothing if there is no recovery by the insured—that is, if the estate receives no part of the settlement. Thus, if the settling parties are the three Sigmundik family members and Thomas Sigmundik's estate, any amount allocated to Thomas Sigmundik would not go to his wife and children but to the Risk Pool as subrogee. Here, the trial court avoided the Risk Pool's subrogation right by directing all the settlement funds to the family and none to the estate.

▇▇▇▇ It was improper to cut the Risk Pool out of a settlement to which it, through the estate, has a valid claim, just as it would be an error to cut out any other estate creditor or recipient in this situation. As in all cases tried to the bench, the trial court was authorized to decide disputed issues of fact and law, *see* Tex.R. Civ. P. 262, however, a trial court abuses its discretion by failing to follow guiding rules and principles. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex.2009). Here, the trial court could not cut the estate completely out of the settlement just because the estate's main beneficiary is an insurance company or, more to the point, because the trial court believed the surviving family needed the money more than the

insurer. This is especially true where beneficiaries and representatives are trying to remove others with an interest in the estate, notwithstanding fiduciary and other obligations owed by those asserting control of the estate. *See, e.g.,* TEX. PROB.CODE § 37 (providing that if someone dies intestate, his estate vests immediately in his heirs at law, but "shall still be liable and subject in their hands to the payment of the debts of the intestate. . . ."). In this context, the "made whole" doctrine has no application; it was not a valid basis for the judgment.

■ The Sigmundiks' other argument in support of the judgment is likewise erroneous. The court of appeals found that the Risk Pool failed to carry its burden of establishing that settlement funds should be allocated to the estate. 315 S.W.3d 67. However, the Risk Pool provided such evidence. The Risk Pool requested the full amount of the medical expenses, $336,874.71, beginning with its first petition in intervention. The Risk Pool provided extensive medical records and testimony to support both the expenses it requested and the damages suffered by Sigmundik; that evidence was uncontroverted. Even Sigmundik's wife testified that his injuries—for which the Risk Pool could seek recovery—amounted to "[e]xceedingly more than" one million dollars. In short, there was evidence that the damages to Sigmundik exceeded the amount of the $800,000 settlement. There can be no doubt that all of the parties here—Sigmundik's wife and children, but also Sigmundik himself (and thus his estate)—suffered substantial injuries. Trial-court discretion is not boundless and cannot insulate a decision to allocate none of the $800,000 settlement to Sigmundik when the court knew the facts surrounding his severe burns and trauma, his suffering and numerous surgeries, and his death 52 days later.

■ The Sigmundiks also argue that the Risk Pool lacked standing to bring its claim via the estate. However, the Risk Pool asserts it is entitled to a distribution of the settlement funds since its contract gives it a lien on any judgment recovered by the estate; it does not claim to be bringing an action on behalf of the estate. Moreover, the Sigmundiks asserted *their* claims "as the sole and legal heirs and beneficiaries of Thomas M. Sigmundik, deceased and/or of the Estate of Thomas M. Sigmundik, deceased." We have held that heirs in a survival action may sue on behalf of the decedent's estate if they allege there is no administration pending and none is necessary, which was done here. *See Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 850–51 (Tex.2005); *Shepherd v. Ledford,* 962 S.W.2d 28, 31–32 (Tex. 1998). The Risk Pool seeks only to intervene in that action, and has standing to do so. Even if there had been a problem with the Risk Pool's capacity, the Sigmundiks did not challenge the Risk Pool's capacity to intervene in the survival action, so that argument has been waived. TEX.R. CIV. P. 93; *Austin Nursing Ctr.,* 171 S.W.3d at 849 (holding that "a challenge to a party's capacity must be raised by a verified pleading in the trial court").

■ As we noted in *Fortis Benefits,* "contract rights generally arise from contract language; they do not derive their validity from principles of equity but directly from the parties' agreement." 234 S.W.3d at 647. Here, the trial court acknowledged the subrogation provision, quoted it in full, and then denied any distribution of funds based upon the provision. While the trial court was free to exercise some discretion in dividing the settlement funds, it abused its discretion by awarding the Risk Pool nothing. The

"made whole" doctrine has no application in this case. Accordingly, in light of our *Fortis Benefits* decision and without hearing oral argument in this case, we grant the petition for review, reverse the court of appeals' judgment, and remand to the trial court to determine what portion of the settlement funds should be allocated to the estate. *See* Tex.R.App. P. 59.1.