# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 13, 2010

No. 09-20060

Lyle W. Cayce
Clerk

AMERISURE INSURANCE CO.,

Plaintiff-Appellant,

v.

NAVIGATORS INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, BARKSDALE, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case arises out of a disagreement between two insurers over their respective duties to indemnify for personal injuries sustained in an automobile accident. Amerisure, the primary insurer, argued that it did not have a duty to indemnify. Navigators, the excess insurer, disagreed, demanding that Amerisure pay the $1 million limit of its policy. The insurers, however, agreed that the personal-injury lawsuit should be settled, and they agreed on the amount of the settlement, $2.35 million. Amerisure paid the $1 million, but reserved its right to seek reimbursement. Navigators and another insurer paid the balance. Amerisure then sought reimbursement from Navigators through equitable and contractual subrogation. On cross-motions for summary judgment, the district

No. 09-20060

court granted summary judgment for Navigators, finding that, although the Amerisure policy did not cover the incident, Amerisure could not recover through equitable or contractual subrogation.

Before us are four issues: (1) whether *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765 (Tex. 2007), bars Amerisure's contractual-subrogation claim; (2) whether equitable subrogation is available; (3) whether Amerisure had a duty to indemnify under three exclusions in its policy; and (4) whether the conditional exclusion of the Navigators policy applied. We conclude that contractual subrogation is available, and hence, we do not reach the claim for equitable subrogation. Furthermore, we conclude that there is a genuine issue of material fact as to Amerisure's duty to indemnify. Finally, we conclude that the conditional exclusion does not apply. Accordingly, we VACATE the grant of summary judgment on the contractual-subrogation claim, and we REMAND for the determination of Amerisure's duty to indemnify.

BACKGROUND AND PROCEDURAL HISTORY

On October 9, 2003, William Sylvester drove two employees of Texas Crewboats Inc., Captain Dixie Clanton and Deckhand Jimmy Satterfield, from Freeport, Texas to Morgan City, Louisiana where the two were to board and crew the Florida Lilly, one of Texas Crewboats's vessels. While en route, Sylvester fell asleep at the wheel, thereby causing the vehicle to veer off of the road and flip over. Clanton and Satterfield suffered significant injuries as a result. They sued Texas Crewboats and Sylvester in Louisiana state court, claiming negligence and recklessness against Sylvester and bringing similar claims under the Jones Act against Texas Crewboats. Clanton and Satterfield claimed that Sylvester was driving in the course and scope of his employment

No. 09-20060

with Texas Crewboats and that Texas Crewboats was vicariously liable. They also sued Texas Crewboats for maintenance and cure benefits.

At the time, Texas Crewboats carried three insurance policies that the incident potentially implicated. Amerisure provided $1 million of primary automobile-liability insurance. Under that policy, Sylvester, who was driving the vehicle with the permission of Texas Crewboats, was also an insured. Fireman's Fund Insurance Company provided $1 million of primary coverage for marine protection and indemnity. Navigators was the excess insurer, covering up to $9 million. Under this arrangement, if an incident fell within the coverage of any of the primary insurers, that insurer must indemnify the insured up to $1 million, and then, Navigators would cover the remainder up to $9 million.

The Amerisure policy contains three exclusions that are relevant here:

The insurance does not apply to any of the following: . . .

3. WORKERS COMPENSATION

Any obligation for which the insured or the insured's insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.

4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

Bodily Injury to:

a.    An employee of the insured arising out of and in the course of employment by the insured . . .

But this exclusion does not apply to bodily injury to domestic employees not entitled to workers compensation benefits or to liability assumed by the insured under an insured contract.

5. FELLOW EMPLOYEE

No. 09-20060

Bodily injury to any fellow employee of the insured arising out of and in the course of the fellow employee's employment.

The Amerisure policy also reserves Amerisure's right to subrogation:

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after accident or loss to impair them.

The Navigators policy contains a conditional exclusion that reads,

As respects all activities of the Assured (except liability arising out of ownership, charter, use, operation, maintenance, loading, unloading, ship repairing or as a bailee of any watercraft not otherwise excluded or limited herein), this insurance shall be free from liability (unless coverage is provided in an underlying policy scheduled hereon, and then coverage hereunder shall only operate as excess of such coverage):

(a) from operation, ownership, use of any automobile, truck or aircraft . . . .

Under the circumstances, Texas Crewboats wanted the case settled, and all of the interested parties, including the insurers, agreed. Following mediation, the parties agreed to the following settlement: Clanton's claims would be settled for $1,325,000 and Satterfield's for $1,025,000. The insurers, however, could not agree on which of them should pay. Amerisure argued that only the Fireman's and Navigators policies applied. Navigators insisted that the incident also fell within the Amerisure policy, and therefore, demanded that Amerisure pay its $1 million limit.

In April 2006, Amerisure moved for summary judgment in Louisiana state court, seeking a declaration that its policy did not cover the incident. On June 15, 2006, Amerisure voluntarily withdrew that motion. Ultimately,

No. 09-20060

Amerisure paid $1 million and Navigators paid $1.35 million, which included sums from Fireman's. In the settlement agreement, Amerisure reserved its right to seek reimbursement from Navigators through subrogation. During those settlement negotiations, Amerisure filed this subrogation action in the United States District Court for the Southern District of Texas.

The parties filed cross-motions for summary judgment before the district court in 2006. The motions focused on three issues: (1) whether the three exclusions in the Amerisure policy applied, (2) whether the conditional exclusion in the Navigators policy applied, and (3) whether Amerisure could recover through contractual and equitable subrogation. Over two years later, in January 2009, the district court issued its opinion, addressing only the first and third issues. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 04:06-CV-2069, op. at 1-4 (S.D. Tex. Jan. 7, 2009). It decided the former for Amerisure, finding that all three exclusions "equally apply to deny coverage." *Id.* at 2. Nonetheless, the court denied reimbursement because it found that Amerisure could not pursue contractual- or equitable-subrogation claims against Navigators. *See id.* at 3. With respect to contractual subrogation, the court held that Navigators had been released from liability as a party to the settlement. *See id.* It also held that, under *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765, 776 (Tex. 2007), "Amerisure has no contractual right to be subrogated" because the insured parties were fully indemnified. *Id.* On the question of equitable subrogation, the court found that Amerisure voluntarily contributed to the settlement. *See id.* Amerisure timely appealed.

No. 09-20060

STANDARD OF REVIEW

The court reviews, *de novo*, a district court's award of summary judgment, applying the same standard as the district court. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford*, 264 F.3d at 498 (citation omitted).

DISCUSSION

I.    Contractual Subrogation and *Mid-Continent*

The first issue that we must address is one of first impression for this court: whether *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765, 776 (Tex. 2007), precludes contractual subrogation simply because the insured has been fully indemnified. We hold that it does not.

In Texas, parties create contractual-subrogation rights by agreement or contract, granting the right to pursue reimbursement from a third party in exchange for payment of a loss. *See id.* at 774. When the insurer seeks to recover through contractual subrogation, it "stands in the shoes of the insured, obtaining

only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Id.*

The Texas Supreme Court, in *Mid-Continent*, elaborated on the contractual-subrogation doctrine when this court presented the following certified question:

> Two insurers, providing the same insured applicable primary insurance liability coverage under policies with $1 million limits and standard provisions (one insurer also providing the insured coverage under a $10 million excess policy), cooperatively assume defense of the suit against their common insured, admitting coverage. The insurer also issuing the excess policy procures an offer to settle for the reasonable amount of $1.5 million and demands that the other insurer contribute its proportionate part of that settlement, but the other insurer, unreasonably valuing the case at no more than $300,000, contributes only $150,000, although it could contribute as much as $700,000 without exceeding its remaining available policy limits. As a result, the case settles (without an actual trial) for $1.5 million funded $1.35 million by the insurer which also issued the excess policy and $150,000 by the other insurer.
>
> In that situation is any actionable duty owed (directly or by subrogation to the insured's rights) to the insurer paying the $1.35 million by the underpaying insurer to reimburse the former respecting its payment of more than its proportionate part of the settlement?

*Id.* at 768. Both policies included pro rata clauses, limiting each insurer's exposure to the lesser of (1) the limit of the policy that it issued and (2) its proportion of the settlement. *Id.* at 772. The Texas Supreme Court held that,

> in the context presented, . . . a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights

that a co-insurer may assert against another co-insurer in subrogation.

*Id*. at 772, 775-76. From this, the court concluded that, "after being fully indemnified, [the insured does not have] any contractual rights remaining against Mid-Continent. Because [the insured] has no rights to which Liberty Mutual may be subrogated, Liberty Mutual has no right of reimbursement through subrogation." *Id*. at 777.

District courts in this circuit have differed on the impact that *Mid-Continent* has had on contractual subrogation. Two courts, including the district court here, have broadly construed *Mid-Continent* to preclude contractual subrogation whenever the insured is fully indemnified or defended:

> Because the men fully recovered their losses in the settlement, they no longer have contractual rights against either co-insurer—even where not all of them contributed to the men's recovery. Without a claim against an insurer, Amerisure has no contractual right to be subrogated. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007).

*Amerisure Ins. Co. v. Navigators Ins. Co.*, 04:06-CV-2069, op. at 3 (S.D. Tex. Jan. 7, 2009); *see also Trinity Univ. Ins. Co. v. Employers Mut. Cas. Co.*, 586 F. Supp. 2d 718, 731 (S.D. Tex. 2008) ("Applying *Mid-Continent*, Plaintiffs stand in no better position than Lacy Masonry, who, having been fully defended by Plaintiffs in the underlying suit, has no basis to recover damages against EMC for its failure to defend."), *aff'd on other grounds and rev'd on other grounds*, 592 F.3d 687 (5th Cir. 2010).[1] On appeal, this court did not reach the subrogation question under *Mid-Continent* after finding that the appellants could recover through a contribution claim. *See Trinity Univ. Ins. Co. v. Employers Mut. Cas. Co.*, 592

---

[1] Navigators has not argued for affirmance on this basis.

F.3d at 695-96.

The majority of courts, however, have cabined *Mid-Continent* to its facts. *See Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.*, No. EP-08-CV-285-DB, 2008 WL 5686082, at *5 (W.D. Tex. Dec. 19, 2008) (noting that *Mid-Continent* was heavily dependant on the existence of pro rata clauses and that it "should not be stretched beyond the facts which underlie that case"); *Duininck Bros., Inc. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4372709, at *9 (E.D. Tex. Sept. 19, 2008) ( "*Mid-Continent* is a narrow case . . . ."); *Lexington Ins. Co. v. Chi. Ins. Co.*, No. H-06-1741, 2008 WL 3538700, at *13, 21-22 (S.D. Tex. Aug. 8, 2008) (emphasizing that *Mid-Continent* "does not address whether an insurer that contributes to a settlement fund but denies coverage for the underlying lawsuit, and that reserves the right to dispute coverage and seek reimbursement for the entire amount it paid, may recover that amount from the other insurer . . ."); *American Home Assur. Co. v. Liberty Mut. Ins. Co.*, No. 02-3842, 2008 WL 440303, at *2 n.4 (E.D. La. Feb. 12, 2008) (acknowledging that *Mid-Continent* is confined to the factual circumstances).

Most recently, Judge Lee Rosenthal, in a well-reasoned opinion, rejected the argument that *Mid-Continent* automatically precludes subrogation claims whenever the insured is fully indemnified. *See Employers Insurance Co. of Wausau v. Penn-America Insurance Co.*, — F. Supp. 2d —, 2010 WL 1404111, at *12-13 (S.D. Tex. 2010). There, the court emphasized that *Mid-Continent* is limited to situations where the insurers (1) were co-primary insurers, (2) did not dispute that both covered the loss, and (3) were subject to pro rata clauses. *See id.* at *12. The court further reasoned that such a broad reading of *Mid-Continent*

would make statutory or contractual indemnification in Texas unavailable to the insurer of a seller asserting that its acts or omissions did not cause the underlying plaintiff's injury if the seller's insurer assumed the insured's defense and paid to settle the claim. This reading is not supported by the Texas Supreme Court's statements after *Mid-Continent. See Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 145 (Tex. 2008) ("[The allegedly responsible party's] argument that [the settling party] cannot assert equitable subrogation because its indemnity payment was under a voluntary contract would, if accepted and applied to other contracts, be a radical departure from long-settled Texas subrogation law. For instance, insurance policies are contracts, too, and if the hotel's property insurer had paid the hotel for the cost of repairs pursuant to a policy agreement, it would certainly be able to assert an equitable subrogation claim against [the allegedly responsible party].").

*Id.* at *13.

We agree with the majority of courts that have examined this issue and we reject the overly broad view of *Mid-Continent*'s subrogation exclusion. That view would effectively end contractual subrogation in Texas. This cannot be so, particularly in light of the Texas Supreme Court's most recent contractual-subrogation decision in *Texas Health Insurance Risk Pool v. Sigmundik*, — S.W.3d — , 2010 WL 2136625 (Tex. 2010).

Although *Sigmundik* does not specifically address the reach of *Mid-Continent*, it is nonetheless instructive. There, the insurer had fully indemnified the insured for his medical expenses ($336,874.71) arising out of injuries sustained in an oil-field explosion. *See id.* at *1. After the death of the insured, his wife filed a negligence action on behalf of herself, her two minor sons, and the insured's estate. *Id.* The insurer intervened, arguing that it was "subrogated to the rights of [the insured] and his estate" based on an express subrogation

provision in the policy:

> We will be subrogated to all rights of recovery which any person may have against another party for all benefits paid by the Pool which were incurred by the Insured Person as a result of the negligence or misconduct of another party. Our right to repayment shall be a lien against any recovery by the Insured Person whether it be by judgment, settlement, or otherwise.

*Id*. The negligence action settled for $800,000, and the court explained that, through contractual subrogation, the insurer stepped into the shoes of the insured (the estate) and has a valid claim to recover the $336,874.71 from the settlement. *See id*. at *2-3. The court could not have reached this result if the broad view of *Mid-Continent* was in fact the law of Texas.

Since *Mid-Continent*, the Texas Supreme Court has not specified the precise boundaries of its holding as it applies to contractual subrogation when the insured is fully indemnified. Nor do we attempt to do so here. Instead, our decision here is an *Erie* guess, and in making an *Erie* guess, we must determine how the Texas Supreme Court would resolve the issue under the specific circumstances presented. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citation omitted). Accordingly, in light of *Sigmundik*, we hold that *Mid-Continent* does not bar contractual subrogation simply because the insured is fully indemnified.[2]

Our inquiry does not end here, however, as we still must determine whether *Mid-Continent* precludes contractual subrogation in this case. It does not. In *Mid-Continent*, the insured was fully protected because both insurers

---

[2] In so holding, we recognize that one could reasonably interpret the plain language of *Mid-Continent* to support such a broad exclusion of subrogation. We also note that the district court did not have the benefit of *Sigmundik*.

No. 09-20060

acknowledged their duties to defend and indemnify. *See* 236 S.W.3d at 769. Limiting *Mid-Continent* to such circumstances is faithful to the longstanding view of the Texas Supreme Court, as articulated over half a century ago by Justice Jack Pope, that dueling coinsurers must place the interests of their insureds before their own. *See Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 588-89 (Tex. 1969) (emphasizing that the "settled principles" of Texas insurance law require insurers to "give dominant consideration to the rights of the insured"). That is the missing element here: Amerisure insisted that its policy did not apply, and Navigators refused to indemnify until Amerisure paid its $1 million policy limit. In other words, the insureds would not have been fully protected, and applying the *Mid-Continent* exclusion in this situation would have further deviated from settled principles of Texas insurance law by discouraging insurers from first defending and indemnifying and then seeking reimbursement for the costs that a coinsurer should have paid. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 703 (Tex. 2000) (rejecting a view of subrogation as "bad public policy" because it would "discourage insurance companies from paying or settling disputed claims and thereby force insureds more often into litigation with their insurers"); *see also Hardware Dealers*, 444 S.W.2d at 588-89. Therefore, we hold that *Mid-Continent* does not bar contractual subrogation when an insurer has denied coverage.

The district court provided an additional basis for dismissing Amerisure's contractual-subrogation claim. It held that, "[a]lthough Amerisure purchased the right to pursue the mens' claims against third parties, Navigators has been released from liability as a party to the settlement." *Amerisure Ins. Co. v.*

12

No. 09-20060

*Navigators Ins. Co.*, 04:06-CV-2069, op. at 3 (S.D. Tex. Jan. 7, 2009). This overlooks how contractual subrogation places Amerisure in the shoes of its insureds, Texas Crewboats and Sylvester. *See Mid-Continent*, 236 S.W.3d at 774. Neither released Navigators. Furthermore, in its settlement agreement with Clanton and Satterfield, Amerisure reserved its right to recoup its contribution through subrogation from Navigators. In sum, Amerisure has a right to contractual subrogation. Accordingly, we do not reach the equitable-subrogation claim. *See Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 225 (Tex. App.—San Antonio 2009, pet. denied) ("Here, there is no dispute that St. Paul had a contractual subrogation right pursuant to its insurance policy with Hollimon; therefore, the express agreement of the parties controls, and equitable principles do not come into play.").

II.    Coverage under the Amerisure Policy

Although Amerisure has a contractual-subrogation right, that right only entitles it to reimbursement if Amerisure did not have a duty to indemnify its insureds, Texas Crewboats and Sylvester. Amerisure contends that three exclusions in its policy preclude its duty to indemnify. These exclusions relate to workers' compensation, employee indemnification, and injuries to fellow employees, which we will describe in greater detail below. In order to determine Amerisure's duty to indemnify, we must examine how each of these exclusions applies to each insured. That is because Section V.D. of the Amerisure policy requires that, "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or suit is brought." Amerisure has no duty to indemnify if any one of the exclusions applies to each insured. Put differently, Amerisure must

13

No. 09-20060

indemnify if none of the exclusions discharges its duty to indemnify Texas Crewboats and Sylvester.

The district court found that all three exclusions deny coverage.[3] Navigators disputes this, urging us to hold, as an alternative ground for affirmance, that none of the exclusions apply. In addition, Navigators contends that, under the conditional-exclusion clause of its policy, if the Amerisure policy did not cover Sylvester, its policy also would not. In that situation, Navigators argues that Amerisure may not recover its contribution.

With respect to Texas Crewboats, we conclude that only the employee-indemnification exclusion applies. With respect to Sylvester, the only exclusion that could potentially apply is the fellow-employee exclusion, but there is a genuine issue of material fact regarding this question. Hence, the issue of Amerisure's duty to indemnify survives summary judgment. Finally, we conclude that the conditional exclusion of the Navigators policy does not apply.

A. Interpreting Insurance Policies in Texas

"Under Texas Law, insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citations omitted). When an insurance policy is ambiguous or inconsistent, the interpretation that would afford coverage governs. *Id.* (citations omitted). "Exceptions or limitations on an insurer's

---

[3] The district court, in one sentence and without analysis, found that the employee-indemnification and fellow-employee exclusions apply: "The second and third exclusions equally apply to deny coverage." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 04:06-CV-2069, op. at 2 (S.D. Tex. Jan. 7, 2009). In addition, the district court did not separately evaluate coverage for each insured, as the policy requires.

14

liability are construed even more stringent[ly]." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) (citation and internal quotation marks omitted) (alterations in original). The court must accept the interpretation of the exclusionary clause urged by the insured if it is "not itself unreasonable," even if the insurer's interpretation seems "more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) (citations omitted). The court resolves all doubts regarding coverage in favor of coverage. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

An insurer has two responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). Two documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review "without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citations omitted). This is known as the eight-corners rule. *Id.* (citations omitted). Under the eight-corners rule, the "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." *Id.*

The eight-corners rule, however, does not govern the duty to indemnify. *See D.R. Horton-Texas*, 300 S.W.3d at 743-44. That is because the two duties are distinct such that one duty may exist without the other. *Id.* at 743. "In determining coverage, a matter dependent on the facts and circumstances of the

alleged injury-causing event, parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify." *Id.* at 741. With these principles in mind, we now turn to the exclusions at issue.

B.    The Amerisure Exclusions

i. Workers'-Compensation Exclusion

The workers'-compensation exclusion does not preclude coverage for Texas Crewboats or Sylvester.

a. Texas Crewboats

Clanton and Satterfield sued Texas Crewboats for negligence under the Jones Act. This exclusion precludes coverage for "[a]ny obligation for which the insured or the insured's insurer may be held liable under any workers compensation . . . or any similar law." The issue, therefore, is whether the Jones Act is "similar" to workers' compensation. It is not.

The Texas Supreme Court has not addressed this precise question, and we have located only one published decision that is directly on point, *Sanders v. Homes Indemnity Insurance Co.*, 594 So.2d 1345, 1352-53 (La. Ct. App. 3d Cir. 1994).[4] In *Sanders*, 594 So.2d at 1352, the court considered the effect of a similar exclusion, stating that "[t]his insurance does not cover . . . [a]ny obligation imposed by a worker's compensation . . . law . . . or any similar law." The court held that the Jones Act is not similar to workers' compensation because the former is based on the employer's negligence while the latter is not. *See Sanders*, 594 So.2d at 1352-53; *see also Abogado v. Int'l Marine Carriers*,

---

[4] In making an *Erie* guess, this court may consult the decisions of other jurisdictions so long as the highest court of the forum state has not addressed the issue. *See SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (citation omitted).

890 F. Supp. 626, 630 (S.D. Tex. 1995) (explaining that workers'-compensation claims, which are imposed without regard to fault, are not similar to and "independent of claims based on . . . Jones Act negligence" (citation omitted)). We find this reasoning persuasive.

Furthermore, the operative phrase here, "any similar law," is ambiguous with respect to the Jones Act claims. In light of this ambiguity, the court must interpret the term so that it does not exclude coverage. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) (citation omitted).

b. Sylvester

This exclusion does not apply to Sylvester. Clanton and Satterfield charged Sylvester with negligent and reckless driving. Because Sylvester was not Clanton or Satterfield's employer, such claims, if proven, would not create "obligation[s] for which [Sylvester] or [his] insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law."

ii. Employee-Indemnification Exclusion

This exclusion precludes coverage for Texas Crewboats, but not for Sylvester.

a. Texas Crewboats

The parties agree that the accident involved "bodily injury to . . . employee[s] of [Texas Crewboats] arising out of and in the course of employment by [Texas Crewboats] . . . ." Navigators, however, contends that the exclusion is inapplicable under the subsection of the exclusion that states, "[t]his exclusion does not apply to bodily injury to domestic employees not entitled to workers compensation benefits . . . ." According to Navigators, the term "domestic

17

No. 09-20060

employees" does not refer to "butlers and chambermaids," but rather to employees who work in the United States as opposed to those who work abroad. This interpretation is unreasonable, and therefore, does not defeat the otherwise applicable exclusion. *Cf. Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) (citations omitted).

Navigators admits that it was only able to locate one decision to support its interpretation, *Carroll v. Castillo*, No. 13-99-006-CV, 2000 WL 34592617, at *5 (Tex. App.—Corpus Christi April 6, 2000, no pet. h.) (finding that the term "domestic employee" is ambiguous because it can refer to someone who works in the United States, and therefore, the term is "incapable of precise determination for summary judgment purposes"). *Carroll* was not designated for publication, which means that, under Texas Rule of Appellate Procedure 47.7, it has no precedential value. Furthermore, this court does not consider unpublished opinions when making an *Erie* guess. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004).

The Texas Supreme Court has not resolved this question. Nor does it appear that any Texas court has resolved this issue in a published opinion. Thus, we consult decisions from other jurisdictions and the "majority rule" in making this *Erie* guess. *See SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (citation omitted). Several courts have found that the term "domestic employees," as used in an insurance exclusion, refers to household workers and not to those working in the United States. *See, e.g.*, *United Fire & Cas. Co. v. Gravette*, 182 F.3d 649, 655 (8th Cir. 1999) (holding that "domestic" refers to a person who performs services in a private household); *Dakota, Minn., & E. R.R. Corp. v. Heritage Mut. Ins. Co.*, 639 N.W.2d 513, 517 (S.D. 2002)

No. 09-20060

(holding that "domestic servant" means a person whose "labor is directed to the construction, maintenance or repair of the master's private properties or care of the master's family" (internal quotation marks and citation omitted)); *U.S. Fid. & Guar. Co. v. Rosso*, 521 A.2d. 301, 304 (Me. 1987) (holding that the phrase "domestic employee," as found in an insurance exclusion, refers to one that works in a house or on household chores). We agree with the interpretation of these courts.

This domestic-employee exception to the exclusion is inapplicable for another reason—it only applies to those domestic employees who are not entitled to workers'-compensation benefits. Clanton and Satterfield were entitled to such benefits because Texas Crewboats was a workers'-compensation subscriber. In sum, the employer-indemnification exception barred coverage for Texas Crewboats.

### b. Sylvester

This exception does not apply to Sylvester because he was not Clanton or Satterfield's employer: "This insurance does not apply to . . . bodily injury to . . . [a]n employee of the insured . . . ." Sylvester is the "insured." Clanton and Satterfield suffered bodily injuries. In order for this exclusion to apply, they must be employees of Sylvester. Neither party has claimed this, nor is there any basis in the record for this conclusion.

### iii. Fellow-Employee Exclusion

The fellow-employee exclusion does not preclude coverage for Texas Crewboats, but it may preclude coverage for Sylvester if he was an employee of Texas Crewboats.

No. 09-20060

### a. Texas Crewboats

This exclusion does not apply to Texas Crewboats because it is Clanton and Satterfield's employer, not their fellow employee. The exclusion only applies to "[b]odily injury to any fellow employee of the insured . . . ."

### b. Sylvester

Amerisure and Navigators contest whether Sylvester was an employee of Texas Crewboats when the incident occurred. If he was, the exclusion applies, but if he was not, the exclusion does not apply. There is a genuine issue of material fact on this point. Navigators submitted the Declaration of James Travis, the Operations Manager of Texas Crewboats, explaining that Sylvester was not an employee, but rather, an independent contractor. Amerisure disputes this, pointing to deposition testimony from Clanton indicating that Sylvester was an employee. This court must consider the declaration and the deposition testimony when determining an insurer's duty to indemnify. *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 741, 744 (Tex. 2009). In light of this conflicting testimony, neither party is entitled to summary judgment on Amerisure's duty to indemnify.

C.    The Conditional Exclusion of the Navigators Policy

Navigators contends that, if Amerisure does not have a duty to indemnify Sylvester, then Navigators also does not have such a duty under its conditional exclusion, which provides, "this insurance shall be free from liability . . . unless coverage is provided in an underlying policy scheduled hereon, and then coverage hereunder shall only operate as excess of such coverage . . . ." According to Navigators, "[b]ecause Amerisure deliberately declined to include an allocation in its settlement agreement for Amerisure's release versus Sylvester's

20

No. 09-20060

release, no part of the settlement amount is subject to its subrogation."

This conditional exclusion does not apply when the liability "arise[s] out of . . . [the] ownership, charter, use, operation, [or] . . . loading . . . of any watercraft not otherwise excluded or limited herein . . . ." The vessel at issue, the Florida Lilly, appears on the schedule of covered vessels. So the issue is whether the incident arose out of the ownership, charter, use, operation, or loading of the Florida Lilly.

In *Utica National Insurance Co. of Texas v. American Indemnification Co.*, 141 S.W.3d 198, 203 (Tex. 2004), the Texas Supreme Court explained that the phrase "'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." (citations omitted). Citing to our decisions in *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.*, 189 F.2d 374, 378 (5th Cir.1951), and *American States Insurance Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir.1998), the court further noted that "'[a]rising out of' are words of much broader significance than 'caused by.'" *Utica*, 141 S.W.3d at 203. This court has also explained that, under Texas insurance law, the phrase "arising out of" has a broad definition favoring coverage—all that is needed is an "incidental relationship" between a claim and the conduct that the policy describes. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458-59 (5th Cir. 2003) (citations omitted); *American States Ins. Co.*, 133 F.3d at 370 ("[T]he words 'arising out of,' when used within an insurance policy, are 'broad, general, and comprehensive terms effecting broad coverage.'" (citation and footnote omitted)).

Applying this broad definition of "arising out of," we find that there is a

21

No. 09-20060

causal connection or incidental relationship between the incident and the ownership, use, or operation of the Florida Lilly. Texas Crewboats had assigned Clanton and Satterfield to operate the Florida Lilly as captain and deckhand respectively. The incident occurred as Texas Crewboats was transporting them from Freeport, Texas, where Texas Crewboats has offices, to Morgan City, Louisiana, where the Florida Lilly was docked. Texas Crewboats transported them in a company car and provided a driver and a company credit card for food and gas during the trip. Furthermore, Texas Crewboats began paying them for their services as soon as they departed from Freeport. The sole purpose of the trip was to transport these crewmen to the Florida Lilly, where they were to board and operate the vessel. Under these circumstances, we hold that (1) transporting the operators of a vessel (2) to that vessel (3) by the owners of the vessel (4) for the sole purpose of operating that vessel, has an incidental relationship to the ownership, use, or operation of that vessel. Moreover, insofar as the language of this exclusion is "ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) (citations omitted). Accordingly, the conditional exclusion in the Navigators policy does not apply.

## CONCLUSION

For the reasons set forth above, we VACATE the grant of summary judgment, dismissing the contractual-subrogation claim, and we REMAND for the determination of Amerisure's duty to indemnify.[5] Amerisure may seek

---

[5] Because Amerisure's entitlement to recovery remains unresolved, Amerisure's request for attorney's fees under Texas Civil Practice & Remedies Code § 38.001 is premature. *See Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are

No. 09-20060

reimbursement through contractual subrogation if the fellow-employee exclusion precludes coverage for Sylvester. This, in turn, rests on the determination as to whether Sylvester was an independent contractor or an employee of Texas Crewboats.

---

recoverable, and (2) recover damages." (citation omitted)).