

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

April 17, 2017

David Fleeger, M.D.
Chair, Board of Directors
Texas Health Services Authority
5900 Southwest Parkway, Building 2, Suite 201
Austin, Texas 78735

Opinion No. KP-0142

Re: Whether certain funds received by the Texas Health Services Authority are public funds under the Public Funds Investment Act, chapter 2256 of the Government Code (RQ-0136-KP)

Dear Dr. Fleeger:

The Legislature created the Texas Health Insurance Risk Pool ("Pool") to provide health insurance to Texans who were unable to obtain coverage from commercial insurers. *See Tex. Health Ins. Risk Pool v. Sigmundik*, 315 S.W.3d 12, 13 n.1 (Tex. 2010) (describing function of Pool). In the wake of changes to federal law pertaining to health insurance, the Legislature abolished the Pool through passage of Senate Bill 1367.[1] As part of the Pool's dissolution, Senate Bill 1367 distributed $5 million in funds controlled by the Pool to the Texas Health Services Authority ("Authority").[2] You inform us that the Authority is updating its investment policies and ask whether the Public Funds Investment Act ("PFIA"), a law generally governing investment of public funds, applies to the $5 million transferred from the Pool.[3]

To answer your question, we must further expound on the funds' origin. The Pool originally amassed these funds by collecting penalties and interest payments assessed against health insurance companies for late payment of claims. *See* Senate Bill 1367, § 6(e); TEX. INS. CODE §§ 843.342(m), 1301.137(*l*). The Legislature then authorized the Pool to use these funds for the purpose of financing premium discounts on its health insurance policies to qualified Texans based on financial need.[4] When these funds were no longer necessary to fund premium discounts upon dissolution of the Pool, Senate Bill 1367 provided for the distribution of $5 million of these funds to the Authority to be used for any purpose specified in its enabling statute. *See* Senate Bill

---

[1]*See* Act of May 21, 2013, 83d Leg., R.S., ch. 615, 2013 Tex. Gen. Laws 1640, 1640–42 ("Senate Bill 1367").

[2]*See id.* § 6(e)(1).

[3]*See* Letter from David Fleeger, M.D., Chair, Bd. of Dirs., Tex. Health Servs. Auth., to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Sept. 19, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[4]Act of May 18, 2009, 81st Leg., R.S., ch. 265, § 4, 2009 Tex. Gen. Laws 724, 725 (enacting former Insurance Code section 1506.260), *repealed by* Senate Bill 1367, § 8(b).

1367, § 6(e)(1). The Authority is a public-private collaborative established by the Legislature to improve the health care system in the State by promoting and coordinating the exchange of electronic health records. *See* Request Letter at 1; TEX. HEALTH & SAFETY CODE § 182.001. The Authority's enabling statute vests it with the power to pursue a multitude of purposes, including establishing a statewide health information exchange. TEX. HEALTH & SAFETY CODE § 182.101.

The PFIA generally governs the investment of "funds" under the control of certain governmental entities. TEX. GOV'T CODE § 2256.003(a). The Legislature defined "funds" for purposes of the PFIA as "*public funds* in the custody of a state agency or local government that: (A) are not required by law to be deposited in the state treasury; and (B) the investing entity has authority to invest."[5] *Id.* § 2256.002(3) (emphasis added). The $5 million in funding at issue is currently in the custody of the Authority, which appears to meet the definition of a state agency for purposes of the PFIA.[6] To determine whether the PFIA applies, however, we must establish whether these are "public funds."

Yet, as you observe, the PFIA does not define the term. *See* Request Letter at 2. This office previously used the following definition—adopted by a court of appeals—to define "public funds" for purposes of the PFIA:

> [Public funds are] funds belonging to the state or to any county or political subdivision of the state; more specifically taxes, customs, moneys, etc., raised by the operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or governmental purpose; and in this sense it applies to the funds of every political division of the state wherein taxes are levied for public purposes. The term does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian.

*See San Antonio Bldg. & Constr. Trades Council v. City of San Antonio*, 224 S.W.3d 738, 746 (Tex. App.—San Antonio 2007, pet. denied) (adopting Texas Attorney General's definition of public funds to construe PFIA (citations omitted)); *see also* Tex. Att'y Gen. Op. No. GA-0257 (2004) at 3 ("Public funds in section 2256.002(3) denotes funds that belong to the investing entity collected by virtue of some general law, and that are designated to a public purpose." (quotation marks omitted)). In applying this definition, this office looked to several characteristics to determine whether funds may be characterized as public, including: whether the funds belong to the State or are held merely in a custodial role and whether the State may use the funds to discharge

---

[5]Your question assumes the Authority has investment authority; therefore, we do not address this issue. *See* Tex. Att'y Gen. Op. No. GA-0768 (2010) at 2 ("[T]he PFIA is generally in addition to or cumulative of a governmental entity's investment authority granted by other law." (quotation marks omitted)).

[6]The Authority is a public nonprofit corporation described by the Legislature as a public-private collaborative. TEX. HEALTH & SAFETY CODE §§ 182.001, .051(b). Entities subject to the PFIA include a nonprofit corporation acting on behalf of a governmental entity. *See* TEX. GOV'T CODE § 2256.002(13) (defining state agency to include nonprofit corporation acting on behalf of governmental entity).

a public purpose or draw upon them only to benefit particular individuals. *See* Tex. Att'y Gen. Op. No. GA-0257 (2004) at 3 ("The funds were not public funds because they did not belong to the state, because the Department held them as a mere custodian, and because they would not be used to discharge a general public purpose."). Thus, for example, child-support payments submitted to a state agency and held by the State as a custodian for transmittal to private beneficiaries are special, rather than public funds, because the State holds the funds merely in a custodial role for the benefit of the contributors. *See id.* ("[F]unds a state agency possesses merely as a custodian, for the benefit of contributors, are not public funds." (quotation marks omitted)).

Looking to the characteristics of the $5 million in funding at issue, a Texas court would likely conclude that for purposes of the PFIA the funds are more akin to public, rather than special funds. Here, the Pool amassed the funds by assessing penalties against insurers through operation of a general law. *See Phil H. Pierce Co. v. Watkins*, 263 S.W. 905, 906 (Tex. 1924) (defining general laws as "[l]aws which apply to and operate uniformly upon all members of any class of persons, places, or things"); *see also Sterling v. Alexander*, 99 S.W.3d 793, 800 (Tex. App.— Houston 2003, pet. denied) ("A monetary penalty paid to the government becomes public funds."). Moreover, although the Legislature initially specified that the Pool could use the funds only to provide premium discounts, the Pool did not hold the money as a custodian or in trust for individuals who qualified for the discount. Rather, these funds belong to the State as evidenced by the Legislature's abolishment of the Pool and transfer of the funds to the Authority to be used for an entirely different public purpose. *Cf.* Tex. Att'y Gen. Op. No. GA-0257 (2004) at 3–4 (concluding charges to municipal utility customers not public funds where funds did not belong to utility but were held in trust to pay for nuclear decommissioning costs and utility would return any excess funds to customers). Nor are the funds currently held in trust or custodial capacity, as the Authority may use the money for any of its purposes. *Cf.* Tex. Att'y Gen. LO-96-023 (1996) at 2 (concluding money deposited in court registry pending outcome of litigation not public funds, as court holds money in trust for litigants and may not use funds for another purpose); *see also* S.B. 1367, § 6(e)(1) (Authority may use funds for any purpose specified in its enabling statute). Based on these characteristics, a court would likely conclude that the funds are public and governed by the PFIA.

## S U M M A R Y

A court would likely conclude that funds received by the Texas Health Services Authority as a result of the dissolution of the Texas Health Insurance Risk Pool are public funds under the Public Funds Investment Act.

Very truly yours,

*Ken Paxton*

KEN PAXTON
Attorney General of Texas


JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

ASHLEY FRANKLIN
Assistant Attorney General, Opinion Committee