United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 11, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 06-10681

---

TEXAS INDUSTRIES, INC.,

Plaintiff-Appellee,

v.

FACTORY MUTUAL INSURANCE CO.,

Defendant-Appellant.

---

Appeal from the United States District Court for the
Northern District of Texas

---

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

BENAVIDES, Circuit Judge:

Before the court is an appeal of the district court's grant of
summary judgment in favor of Texas Industries, Inc. ("TXI"), denial
of summary judgment in favor of Factory Mutual Insurance Co.
("Factory Mutual"), and denial of Factory Mutual's motion to
reconsider. There is only one disputed issue: the proper
calculation of the insurance deductible. We affirm.

I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The facts are not in dispute. The plaintiff, TXI, has a

cement manufacturing plant with five kilns. TXI obtained property damage and business interruption insurance from the defendant, Factory Mutual. TXI started a previously-planned maintenance outage on Kiln No. 5 on January 5, 2003, which was to last until January 16, 2003. On January 7, 2003, a fire damaged Kiln No. 5, but had no effect on the other kilns. As a result of this fire, production was interrupted until January 30, 2003, and full production did not resume until February 3, 2003. There was a 23-day period in which Kiln No. 5 did not operate at all and a 4-day period in which partial operation occurred. Ten of the days without any operation were part of the previously-planned outage.

TXI submitted a business interruption insurance claim for its loss. The parties have stipulated that the total business interruption loss actually suffered by TXI was $3,916,905. The deductible is subtracted from the amount of loss suffered in order to determine the amount of insurance proceeds to which TXI is entitled. The proper calculation of this deductible is the sole issue before the court.

The policy at issue has a deductible for business interruption claims in the amount of "15 Day's Value Time Element of the Objects Experiencing the Loss or Damage." Factory Mutual's calculation of this deductible yields a deductible of $4,084,323, which is greater than the actual loss suffered by TXI. Factory Mutual accordingly refused to pay for TXI's business interruption claim. TXI calculated a deductible of $2,571,444, which is significantly less

2

than the actual loss suffered.  TXI therefore filed suit seeking the difference between its deductible figure and the actual loss, namely $1,345,461, as well as costs and interest.

Both TXI and Factory Mutual filed motions for summary judgment.  The district court granted TXI's motion for summary judgment, and awarded TXI damages in the amount of $1,345,461 plus costs and interest.  Factory Mutual filed a motion to reconsider that the district court denied.  Factory Mutual timely appealed.

II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*.  *Shell Offshore Inc. v. Babbitt*, 238, F.3d 622, 627 (5th Cir. 2001).  "Summary judgment is appropriate if the record shows 'that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting FED. R. CIV. P. 56(c)).

In diversity cases, such as this one, federal courts look to the substantive law of the forum state.  *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938); *see also Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990).  Texas contract interpretation law indicates that "[i]f policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  "Whether a contract is ambiguous is itself a question of law." *Id*.

The fact that the parties offer different contract interpretations does not create an ambiguity.  *See id.*  "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations.

When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless."  *Id.* (internal citation omitted).  Finally, when an insurance policy can be given multiple reasonable interpretations, "[i]t is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer."  *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984) (noting that this rule is "especially so when dealing with exceptions and words of limitation"); *see also Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 139 (5th Cir. 1998) ("Exceptions and limitations in an insurance policy are strictly construed against the insurer.").

III. <u>DISCUSSION</u>

The deductible for the business interruption at issue is equivalent to "15 Day's Value Time Element of the Objects Experiencing the Loss or Damage."  The term in dispute is the "Day's Value Time Element of the Objects Experiencing the Loss or Damage."  The policy defines this term as:

> The amount equivalent to the number of days shown times
> the 100% daily Time Element value of the objects
> experiencing the direct physical loss or damage including
> the 100% daily Time Element value of all other objects or

operations at the location where the loss or damage occurs which are dependent on the objects experiencing the loss or damage. The 100% daily Time Element value of the objects, including the other dependent daily value will be the full percentage contribution which would have resulted had the loss or damage not occurred to the 100% daily Time Element value of the entire premises at the location. In determining the 100% daily Time Element value, due consideration will be given to the experience of the business before the loss and the probable experience thereafter.

The parties do not dispute that Kiln No. 5 was the only object experiencing a loss; there were no objects dependent on Kiln No. 5. The parties present different methodologies, however, for calculating the deductible.

TXI starts with the total dollar amount of cement that would have been produced at the entire premises during the 27 day period at issue had the fire not occurred: $6,900,388.[1] TXI then divides this total amount by 27, representing the number of days in the period. The result is the "daily time element value" of the entire premises: $255,570. The parties stipulated that Kiln No. 5 produced 67.08% of the plant's total output during the relevant 27-

---

[1]The district court adopted TXI's math in reaching this sum. This figure is arrived at by adding together the stipulated amount of clinker produced by Kiln No. 5 during the four days of partial production and the stipulated total lost clinker production resulting from the fire, for a total expected clinker production from Kiln No. 5 of 95,788 tons. Both TXI and the district court next divide that sum by .6708 because Kiln No. 5 made up approximately 67.08% of the plant's total clinker production. The total expected clinker production of the plant(142,802 tons) would have yielded cement at a rate of 99.12%, resulting in an expected cement production of 141,541 tons. The price of cement was stipulated to be $48.75 per ton, and thus producing the expected production of $6,900,388.

day period, the "full percentage contribution." Accordingly, TXI multiplies the daily time element value of the entire premises by 67.08% to equal the "daily time element value" of Kiln No. 5: $171,430.[2] By multiplying this value by 15, TXI arrives at a deductible of $2,571,444. The difference between the deductible and the stipulated actual damages would thus be $1,345,461 under TXI's calculation.

Factory Mutual disagrees with this calculation method. First, Factory Mutual argues that the deductible should be reached by multiplying the stipulated average tons of clinker produced daily by Kiln No. 5 during the previous six months (5,635) by the number of deductible days (15), then multiplying that sum by the conversion rate of clinker to cement (.9912), and the value of cement per ton ($48.75). This results in a 15-day deductible of $4,084,323. Adopting the district court's equation in the alternative, Factory Mutual argues that total expected production

---

[2]Presumably in an effort to give meaning to the policy's language concerning "the full percentage contribution which would have resulted had the loss or damage not occurred to the 100% daily Time Element value of the entire premises at the location," both TXI and the district court considered the contribution to the total premises, first by dividing the total expected clinker production by .6708, then later multiplying the expected daily value of the entire premises by the same 67.08%. These steps are unnecessary in this particular case, given that no other objects or processes were affected by the damage to Kiln No. 5, and obscure the actual simplicity of the equation. The exact same value is reached by simply dividing the total expected value of cement produced from Kiln No. 5 during the interruption (the clinker production for the period, multiplied by the cement yield rate of 99.12%, multiplied by the going rate of $48.75 per ton) by the period of the interruption (TXI argues 27, Factory Mutual argues 17).

value during the interruption period should be divided by 17 — not 27 — given that Kiln No. 5 would not have been used during the first ten days because of the planned maintenance outage. Factory Mutual argues that to not include any expected contribution by Kiln No. 5 during those ten days while including those days in the denominator produces an atypically low daily production value, and fails to heed the policy's instruction to consider "the experience of the business before the loss." Substituting 17 for 27, the district court's formula results in a deductible nearly identical to that produced by Factory Mutual's suggested formula: $4,084,217. Either sum exceeds the stipulated business interruption loss.

The district court determined that TXI's interpretation was the only reasonable one and adopted its deductible figure. The court rejected Factory Mutual's methodology, finding that it rendered superfluous the second sentence of the contractual definition at issue: "The 100% daily Time Element value of the objects will be the full percentage contribution, which would have resulted had the loss or damage not occurred, to the 100% daily Time Element value of the entire premises at the location." In short, the district court found it necessary to consider the loss in the context of the total premises, and accomplished this by first dividing, then multiplying, the sums at issue by .6708. In this particular case, however, the multiplication and division simply cancelled each other out and had no effect on the deductible amount. Rather, the disputed issue — whether to divide the

7

expected production for the period by 17 days or 27 days — is wholly independent of the second sentence.

Unfortunately, the contract language is ambiguous as to the proper calculation of the "100% daily Time Element value" of the kiln. On one hand, it does stand to reason that dividing the expected production for a 17-day period by 27 days results in an unrealistically low daily value for Kiln No. 5 and, as Factory Mutual argues, fails to give due consideration to the experience of the business before the loss. The contract does not clarify in what way "due consideration" should "be given to the experience of the business," however, and as TXI urges, it is reasonable to interpret that language as recognizing that planned outages are a regular part of the cement business and should be duly acknowledged in the deductible calculation by using 27 as the denominator, rather than 17. Under TXI's reasoning, the total losses incurred during a planned outage are less, and so it makes sense for the deductible to vary accordingly. Because the contract is subject to opposing yet reasonable interpretations, it is ambiguous.

Faced with multiple reasonable interpretations of an insurance contract, we do not choose which interpretation is more reasonable. "[I]f a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *cf. id.*, 811 S.W.2d at 555 ("The court must adopt the

8

construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."). As such, we read the contract in accordance with TXI's interpretation of the deductible calculation language. As all other issues were either resolved by stipulation or waived, the district court properly entered summary judgment in favor of TXI, and properly denied Factory Mutual's motion for summary judgment and motion to reconsider.

IV. <u>CONCLUSION</u>

For the foregoing reasons, we AFFIRM the district court.