# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 12, 2007**

Charles R. Fulbruge III
Clerk

No. 06-31024

MICHAEL THOMAS PULASKI,

Plaintiff–Appellant,

v.

STANDARD INSURANCE COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:04-CV-2021

Before JOLLY, STEWART, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge[*]:

This appeal concerns the grievance of a disabled trial lawyer, Michael Thomas Pulaski, who is now working as senior counsel, in a consulting role, for a law firm. Standard Insurance Company reduced his benefits under an "Own Occupation" disability policy by offsetting a portion of his earnings as a consulting lawyer. Pulaski finds this offset objectionable and argues that it is contrary to the terms of the policy. This case arises under a plan covered by ERISA. This circumstance is not good for the appellant because an insured can

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

overturn the decision of the plan's administrator only if we find that the administrator's interpretation of the policy is unreasonable. Here it is not.

I.

In May 1992, Pulaski's New Orleans firm, Pulaski, Gieger & Laborde, purchased a long-term disability policy from Standard. For a partner such as Pulaski, the policy contracted to provide benefits if he became disabled from practicing law in his particular speciality, which was trial litigation.

In 1998, Pulaski was diagnosed with prostate cancer. He underwent treatment and continued to practice law as a trial litigator until April 2001. Around this time, Pulaski stopped doing trial work and left his firm because of the adverse effect its stressful nature had on his illness. He did, however, continue to practice law, but only in a consulting role and for a different firm.

In August 2001, Pulaski filed a disability claim with Standard, which initially granted him benefits; but, in June 2002, Standard denied him benefits on grounds that there was insufficient evidence that he was disabled. After an appeal and medical review, Standard reversed itself and began paying Pulaski disability benefits. However, Standard applied the Return to Work Incentive provision of the policy[1] and reduced the maximum benefit of $10,000 a month.

On July 19, 2004, Pulaski filed this suit against Standard, contending that it had arbitrarily and capriciously denied him the full benefits that he was owed under the policy. Before the district court, Pulaski argued that there should not be any offset for income earned in work outside his speciality. Standard argued that the policy provided for just such an offset. Both sides moved for summary judgment and, on August 31, 2006, the district court granted judgment in favor of Standard on grounds that the policy was not ambiguous and that the interpretation of it by Standard did not constitute an abuse of discretion.

---

[1] After 12 months of disability, the provision mandates that one-half of Work Earnings are deductible income.

Pulaski then timely filed this appeal.

II.

We review the district court's grant of summary judgment de novo. Texas Industries, Inc. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007). The parties agree that this plan is governed by ERISA. In reviewing determinations of an ERISA insurance plan administrator granted discretion under the policy, we apply an abuse of discretion standard. Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 295 (5th Cir. 1999) (en banc). Only if Standard's decision is arbitrary and capricious may we reverse it. If Standard's interpretation is legally correct, "the inquiry ends because no abuse of discretion could have occurred." Chacko v. Sabre, Inc., 473 F.3d 604, 611 (5th Cir. 2006).

Pulaski contends that Standard has a conflict of interest in its role as administrator because it profits by reducing paid benefits. We therefore use a "sliding scale standard." See Vega, 188 F.3d at 297. Under our precedent, however, we afford only a "modicum less deference" than we otherwise would if the plaintiff merely asserts such a conflict without presenting any evidence of the degree of conflict. Id. In sum, our review "need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." Id.

Pulaski makes sundry overlapping arguments in support of his position. As best we distill his arguments, Pulaski contends that the offset provisions in his policy should not apply because: (1) the Return to Work Incentive does not apply because he has not returned to work in his own occupation; (2) only work earnings from his own occupation (trial lawyer) may be offset; (3) Standard's interpretation defeats the purpose of an "own occupation" policy when it offsets earnings from "any occupation" against "own occupation" benefits; (4) the policy should be interpreted to allow "unlimited earnings" from any occupation with no effect on benefit payments to those disabled from their own occupation; (5) this

policy is the not the policy he thought he bought; (6) Standard's interpretation is unreasonable because it is inconsistent with internal manuals and therefore not uniform; and (7) under the sliding scale standard articulated in Vega, we should find Standard's self-serving interpretation wanting.

Pulaski must relate these arguments to Standard's policy. The policy begins by offering an "Own Occupation Definition of Disability," which states: "You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy, or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation."

This section of the policy also contains the following paragraph, which is at the center of the parties' dispute: "You may work in another occupation while you meet the Own Occupation Definition of Disability. If you are Disabled from your Own Occupation, there is no limit on your Work Earnings in another occupation. Your Work Earnings may be Deductible Income. See Return to Work Incentive and Deductible Income." (Emphasis supplied).

Finally, the "Return to Work Incentive" reads in relevant part: "Work Earnings means your gross monthly earnings from work you perform while Disabled, including earnings from your Employer, any other employer, or self-employment."

None of Pulaski's arguments demonstrate that Standard's interpretation is legally incorrect.

Under the plain language of the cited provisions, the legally correct interpretation is that for those, like Pulaski, who are fully disabled from work in their own occupation, there are no restrictions on "work earnings" from any occupation, except for earnings as a trial lawyer (because earning those would mean that he would no longer be fully disabled); that "work earnings" mean his gross earnings, which includes earnings as a consulting attorney; and that Standard may deduct such "work earnings" from his disability benefits. Thus

Standard's application of the contract was legally correct when it deducted his income as a consulting attorney from his disability benefit payments.

With regard to Pulaski's argument about Standard's internal manuals, we do not read them as inconsistent with Standard's interpretation of the policy. In any event, there is no evidence that Standard has ever interpreted policies of this sort differently from it has here; consequently, Pulaski has not established a non-uniform interpretation. Because Standard's application of the policy is correct, there is no occasion to apply a sliding scale to the abuse of discretion standard of review.

With respect to Pulaski's argument that Standard's interpretation essentially eviscerates the value of an "own occupation" policy, we should also note the ironic fact that although Pulaski's "work earnings" may severely minimize his benefits under his "own occupation" policy, nothing in the policy cited to us requires him to work at all, and if he chooses not to work in another occupation, he will draw the unimpaired benefits under the policy so long as he remains totally disabled from work as a trial lawyer.

III.

In sum, we hold that Standard's interpretation is legally correct and nothing that Pulaski has offered puts that conclusion into doubt. Thus, for the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.