# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2011

No. 09-11106

Lyle W. Cayce
Clerk

COLONY INSURANCE CO.,

Plaintiff–Intervenor Defendant–Appellee

v.

PEACHTREE CONSTRUCTION, LTD.,

Defendant–Appellant

GREAT AMERICAN INSURANCE, CO.,

Intervenor–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before GARZA and BENAVIDES, Circuit Judges, and LYNN[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Appellants Peachtree Construction, Ltd. ("Peachtree") and Great American Insurance Company ("Great American") appeal the district court's grant of summary judgment in favor of Appellee Colony Insurance Company ("Colony"). Great American also appeals the lower court's Fed. R. Civ. P. 12(b)(6) dismissal of Great American's complaint in intervention.

[*]District Judge of the Northern District of Texas, sitting by designation.

This appeal raises two issues: (1) whether, under Texas law, an insurer's duty to indemnify an insured is subordinate to the insurer's duty to defend that insured; and (2) whether an excess-liability insurer can maintain a subrogation claim against a primary-liability insurer after the insured has been fully indemnified. The district court answered these questions, "yes," and "no," respectively, based on the court's interpretation of then-existing Texas law. After the district court ruled, however, the Texas Supreme Court took up the first question in *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740 (Tex. 2009), while we addressed the second in *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299 (5th Cir. 2010). Both appellate courts reached holdings contrary to the district court on the issues now before us. Accordingly, we VACATE the district court's orders granting summary judgment for Colony and dismissing Great American's complaint in intervention, and REMAND for further proceedings.

## I

Peachtree was hired by the Texas Department of Transportation as the general contractor for a highway repaving project. Peachtree subcontracted with CrossRoads, L.P. ("CrossRoads") to provide construction signs, barricades, and warning devices for the project site. As mandated by the parties' contract, CrossRoads obtained general-liability and excess-liability insurance and named Peachtree as an additional insured under both policies. The parties further agreed that CrossRoads' insurance would be "primary over any other insurance carried separately by [Peachtree]." Colony provided CrossRoads' primary-liability coverage.[1]

In addition to being covered under the CrossRoads policies, Peachtree also maintained its own primary and excess-liability insurance. Travelers Insurance

---

[1] CrossRoads' excess carrier has only been marginally involved in the litigation and is not a party to this appeal.

Company ("Travelers") served as Peachtree's primary insurer, covering claims up to $1 million, while Great American provided Peachtree's excess coverage.

Not long after the repaving project began, Kari Lee's husband died after losing control of his motorcycle and crashing at the construction site. Lee filed a wrongful death suit ("the underlying suit") against Peachtree for negligence and gross negligence in causing her husband's death by, among other lapses, "failing to use required and reasonable signage, barricades, and warnings to drivers of the hazardous drop-off." Peachtree joined CrossRoads as a third-party defendant and, as an additional insured under CrossRoads' primary policy, asked Colony to defend the underlying suit. Colony agreed, but paid the costs of Peachtree's defense with a reservation of rights.

While the underlying suit was pending, Colony filed a separate declaratory judgment suit against Peachtree and Travelers. Colony maintained that it had no duty to defend or indemnify Peachtree in the underlying suit because Lee's petition only named and alleged negligence by Peachtree. CrossRoads, Colony's named insured, was not mentioned in the petition. Peachtree and Travelers counterclaimed, seeking a declaration of Colony's duties to defend and indemnify Peachtree as an additional insured.

Before the district court resolved the declaratory judgment suit, the underlying suit settled for $2 million. Travelers and Great American contributed $1 million and $650,000, respectively, on behalf of Peachtree, while Colony contributed $350,000 on behalf of CrossRoads. The settlement meant that Peachtree was fully indemnified for the claims asserted in the underlying suit. Meanwhile, the insurers continued to dispute which company was liable for the amount in excess of the $1 million paid by Travelers.

After the settlement, Great American intervened in the declaratory judgment suit, asking the court to find that Colony had a duty to defend and indemnify Peachtree in the underlying suit, and seeking reimbursement from Colony for Great American's $650,000 settlement contribution. The district

court dismissed Great American's complaint in intervention under Fed. R. Civ. P. 12(b)(6).  Relying on the Texas Supreme Court's decision in *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007), the court found that Great American's reimbursement claims were foreclosed as a matter of law.

The district court also entered summary judgment for Colony in the declaratory judgment action, finding that because Colony had no legal duty to defend Peachtree in the underlying suit, it could have no duty to indemnify Peachtree either.  The district court struck, and refused to consider, summary judgment evidence offered by Peachtree and Great American to establish Colony's duty to indemnify.

On appeal, Peachtree and Great American challenge the district court's finding that Colony owed no duty to indemnify Peachtree.  They do not contest the court's ruling on the duty to defend.  Great American also appeals the district court's Fed. R. Civ. P. 12(b)(6) dismissal of its complaint in intervention. Travelers is not participating in this appeal.

## II

We review a district court's grant of summary judgment *de novo*.  *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citation omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Where federal jurisdiction is based on diversity of citizenship, as it is here, a federal court looks to the substantive law of the forum state.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Tex. Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007).  The parties agree that the substantive law of Texas applies here.

We also review a district court's dismissal for failure to state a claim *de novo*.  *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 949 (5th Cir. 1999).  When considering a Rule 12(b)(6) motion, we liberally construe the complaint in favor of the plaintiff and accept all well-pleaded factual allegations

as true. *See Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to raise a non-speculative right to relief. *Id.* To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III

This appeal requires us to determine: (1) whether the district court erred in granting summary judgment for Colony based on the court's finding that, as a matter of law, Colony had no duty to indemnify Peachtree; and (2) whether Great American can maintain a subrogation claim against Colony after Peachtree has been fully indemnified.

## A

In Texas, an insurer's duties to defend and indemnify its insured are "distinct and separate duties." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997). The duty to defend means the insurer will defend the insured in any lawsuit that "alleges and seeks damages for an event potentially covered by the policy," while the duty to indemnify means the insurer will "pay all covered claims and judgments against an insured." *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (quoting 14 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 200:3 (3d ed. 2009)). The difference between the two is a matter of timing.

When an insured party is sued, an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). This is known as the eight-corners rule. *Id.* "Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). Moreover, the

duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, *potentially* assert a claim for coverage under the insurance policy. *Id.* at 308; *see also* 14 COUCH ON INSURANCE § 200:19 ("Even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend."). Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed.

In contrast, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *see also VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011) ("[A]n insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action."). This is because, unlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy. *See Cowan*, 945 S.W.2d at 821*; D.R. Horton*, 300 S.W.3d at 744.

Thus, in many cases an insurer may have a duty to defend but, eventually, no duty to indemnify. *See Griffin*, 955 S.W.2d at 82 ("[A] plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted intentionally and not negligently may negate the insurer's duty to indemnify."). This has led some courts to observe that in Texas the duty to defend is broader than the duty to indemnify, *see, e.g., Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006), because an insurer is obligated to defend whenever there is any potential basis for liability

under the policy, while the duty to indemnify may never be realized.[2] *See Pine Oak*, 279 S.W.3d at 656 & n.30; *GuideOne*, 197 S.W.3d at 310. Other courts have run with this concept, erroneously holding that because the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify absent a duty to defend. *See D.R. Horton*, 300 S.W.3d at 744–45 & n.4. The district court relied on that faulty assumption in granting summary judgment for Colony here.

In ruling on Colony's motion, the district court first considered whether Colony had a duty to defend Peachtree. Applying the eight-corners rule, the court restricted its inquiry to Lee's petition and the Colony-CrossRoads policy. Since Colony's duty to defend Peachtree as an additional insured was conditioned on CrossRoads' association in the underlying suit, and CrossRoads was not mentioned in the petition, the court found that Colony had no duty to defend Peachtree. That finding has not been challenged.

The district court then turned to the duty to indemnify. Though the court appears to have recognized that the two duties are governed by separate inquiries, it nonetheless found that since CrossRoads was not mentioned in Lee's petition, "even conclusive proof of the factual allegations asserted would not trigger coverage by Colony for Peachtree under the Colony-CrossRoads policy. Thus, there is no duty to indemnify."

In granting summary judgment for Colony, the court did not consider evidence offered by Peachtree and Great American intended to show a genuine issue of material fact on Colony's duty to indemnify (*i.e.*, that Peachtree's

---

[2] Recently, we characterized the difference between the two duties in even starker terms, noting that "[t]he relative breadth of the duty to defend when compared to the duty to indemnify is actually irrelevant to the inquiry. In reality, the questions of defense and indemnity are better understood as independent matters evaluated under their own interpretive rules. A duty to indemnify can arise where there is no duty to defend . . . and vice versa, though the former is less common than the latter." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 n.1 (5th Cir. 2009).

liability arose out of CrossRoads' operations as required by the Colony-CrossRoads policy.)

Two months after the district court's ruling, the Texas Supreme Court rejected the view, relied on by the district court here, that the duty to indemnify is appurtenant to the duty to defend. In *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, a general contractor/homebuilder brought a coverage action against one of its subcontractors' insurers to recover funds paid in a pretrial settlement. 300 S.W.3d at 741. Although the underlying suit stemmed from conduct that the homebuilder had subcontracted to another party, only the homebuilder was named as a defendant. *Id.* at 742. The subcontractor's insurer argued that it had no duty to defend under the eight-corners rule because the homeowner's petition in the underlying suit, like Lee's petition here, did not name the subcontractor. *Id.* The insurer further argued that because it had no duty to defend the homebuilder, by implication, it could have no duty to indemnify either. *Id.* The state trial court and the court of appeals both embraced this view. *Id.* The Texas Supreme Court did not.

In *D.R. Horton*, the Texas Supreme Court clarified that an insurer may have a duty to indemnify even though the duty to defend never arises. *Id.* at 741, 744. The court repudiated those decisions, like the district court's here, that mistakenly rely on *Griffin* for the proposition that one duty is subordinate to the other. *Id.* at 744–45 & n.4. Where there has been an underlying trial on the issue of liability, the facts adduced at trial might differ from the allegations, and thus, a duty to indemnify could be shown notwithstanding the absence of a duty to defend. In cases like this, where the underlying liability dispute is resolved before trial and there is no opportunity to develop the facts, additional evidence—not relevant to the issue of liability but essential to coverage—may be introduced during the coverage litigation to establish or refute the duty to indemnify. *Id.* at 741, 744. Were the rule otherwise, insureds like Peachtree could never establish coverage (*i.e.*, the insurer's duty to indemnify) where there

was no underlying trial on liability, or the underlying trial failed to provide all the facts necessary to determine coverage. *See Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) ("The underlying case often does not resolve all the factual issues necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability. . . . Therefore, courts are not precluded from making factual findings in coverage actions.").

Here, Peachtree and Great American provided extrinsic evidence to show that the claims in the underlying suit implicated CrossRoads, and therefore required Colony to indemnify them. The district court refused to consider this summary judgment evidence because it determined that "even conclusive proof of the factual allegations asserted [in Lee's petition] would not trigger coverage by Colony for Peachtree under the Colony-CrossRoads policy."

In light of *D.R. Horton*, the district court's summary judgment for Colony was both premature and incorrect. *See* 300 S.W.3d at 744–45. The Colony-CrossRoads policy includes a blanket endorsement provision for additional insureds that covers Peachtree "*with respect to* liability arising out of [CrossRoads'] ongoing operations performed for [Peachtree]." (emphasis added). Texas courts have interpreted "with respect to" to include coverage for an additional insured's negligence whenever there is a "causal connection or relation" between the subcontractor's work and the additional insured's liability. *See, e.g., Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 666 (Tex. 2008) (holding "with respect to" means a "'causal connection or relation' between the event and operations" and that "[t]he particular attribution of fault between insured and additional insured does not change th[is] outcome"). Peachtree and Great American's proffered evidence was more than sufficient to raise a question of fact concerning the existence of a "causal connection or relation" between CrossRoads' subcontracted work and the accident in the underlying suit. As in *D.R. Horton*, facts outside the pleadings here may or may

not prove that the actual basis of Peachtree's liability was covered by the Colony-CrossRoads policy. That issue will be determined in the coverage litigation on remand.

**B**

We now turn to whether the district court erred in dismissing Great American's complaint in intervention under Fed. R. Civ. P. 12(b)(6) after finding, as a matter of law, that under *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007), Great American could not maintain a subrogation action against Colony after Peachtree was fully indemnified. We first address, however, two of Colony's preliminary arguments, either of which would obviate the need to reach the *Erie* question that arises if we reverse the district court.

**1**

Colony first argues that Great American's complaint in intervention is legally insufficient to state a claim for relief. We disagree. Liberally construing Great American's complaint, as we are required to do, we find that Great American has set forth sufficient factual matter to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Great American's complaint alleged, in sufficient factual detail, that Peachtree's first layer of insurance coverage was with Colony, that Colony was responsible for paying the remainder of its policy limits on behalf of Peachtree in settling the underlying litigation, that Great American tendered a $650,000 settlement contribution to indemnify Peachtree for which Colony was actually responsible as a primary insurer, and that Colony was obligated to reimburse Great American for that amount. Reviewing the matter de novo, we find that Great American's complaint sets forth a facially plausible claim for reimbursement under theories of contractual and equitable subrogation.[3]

---

[3] Colony maintains that Great American's complaint is insufficient to state a claim for contractual subrogation because Great American failed to include the pertinent terms and conditions of the Great American-Peachtree excess policy in its complaint. While this may

Next, Colony contends that Great American's settlement contribution was voluntary, and thus, incapable of supporting a claim for reimbursement under equitable subrogation. *See* Appellee's Br. at 25–26. As Colony correctly notes, equitable subrogation requires that the payee insurer have acted involuntarily in making the payment. Nonetheless, in the context of equitable subrogation, Texas courts have been liberal in their determinations that payments were made involuntarily. *See Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 542 (Tex. App.–Corpus Christi 1993). Moreover, an excess insurer's payment to settle a suit against the insured has been said to be presumptively involuntary for subrogation purposes. *Id.* at 543. "An insurer who pays a third-party claim against its insured is not a volunteer if the payment is made in good faith and under a reasonable belief that the payment is necessary to its protection." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 702–03 (Tex. 2000). Because an inquiry into Great American's good faith and the reasonableness of its beliefs in tendering the settlement payment on behalf of Peachtree would involve matters beyond the scope of the pleadings, the district court could not have dismissed Great American's complaint under Rule 12(b)(6). *See Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010) ("In ruling on a motion to dismiss, the district court generally 'must not go outside the pleadings.'") (citation omitted). The voluntary payment doctrine cannot serve as a basis for affirming the district court here.

**2**

Whether, as a matter of Texas substantive insurance law, Great American can maintain a subrogation claim against Colony after Peachtree has been fully indemnified is the ultimate question before us.

There are three types of subrogation rights recognized in Texas: contractual, equitable, and statutory. *See Fortis Benefits v. Cantu*, 234 S.W.3d

---

have been advisable, it is certainly not required by Fed. R. Civ. P. 8(a)(2) or 12(b)(6).

642, 648 (Tex. 2007). Caselaw most often discusses the first two. *See, e.g., Mid-Continent*, 236 S.W.3d at 774; *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 167 n.7 (Tex. App.–San Antonio 1993) (a right to subrogation may arise either from an agreement between the parties or in equity to prevent a fraud or injustice). To prevail on a claim of equitable subrogation, a party must show that it involuntarily paid a debt primarily owed by another which in equity should have been paid by the other party. *See Mid-Continent*, 236 S.W.3d at 774; *Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142, 144–46 (Tex. 2008). Contractual subrogation, on the other hand, is "created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss." *Mid-Continent*, 236 S.W.3d at 774. Under both types of subrogation, the insurer "stands in the shoes of the insured" and may assert only those rights held by the insured against a third party, subject to any defenses the third party holds against the insured. *Id.* Here, the district court relied on *Mid-Continent* in finding that, because Peachtree was a fully indemnified insured, Great American's subrogation claim against Colony was foreclosed as a matter of law.

In *Mid-Continent*, two insurance companies separately provided primary insurance coverage to the same insured and cooperatively assumed the defense of the negligence suit against the insured. 236 S.W.3d at 769–70. The suit was settled for $1.5 million, and based on their divergent valuations of the case, one of the insurance companies paid a disproportionate share of the settlement. *Id.* at 770. The overpaying insurer then sued its co-insurer for, *inter alia*, reimbursement through subrogation to the rights of the insured. *Id.* In denying the overpaying insurer's contractual subrogation claim, the Texas Supreme Court rested its decision on the precept in subrogation law that a subrogee insurer "stands in the shoes of the insured," and that its remedies are limited to those held by the insured. *Id.* at 774. The court explained that

a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation.

*Id.* at 775–76. Because the insured in *Mid-Continent* had no contractual rights remaining against either co-primary insurer after it was fully indemnified, the Texas Supreme Court held that there were no means by which the overpaying insurer could maintain a subrogation claim against the second co-primary insurer.[4] Following *Mid-Continent*'s reasoning, the district court here found that Peachtree had no remaining rights, after being fully indemnified, to enforce Colony's duty to pay its share of the indemnification, and thus, that Great American could not recover its portion of the settlement contribution through subrogation. The court dismissed Great American's complaint under Fed. R. Civ. P. 12(b)(6) accordingly.

After the district court issued its ruling, however, we rejected an overly broad view of *Mid-Continent*'s subrogation exclusion, holding as an *Erie* guess that *Mid-Continent* does not bar contractual subrogation simply because an insured has been fully indemnified. *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 305–07 (5th Cir. 2010).

In *Amerisure*, a primary insurer that disputed its liability nonetheless paid $1 million toward a personal-injury settlement and then sought reimbursement from the excess insurer through subrogation. 611 F.3d at 302. Relying on *Mid-Continent*, the district court there held that subrogation was unavailable because the insured was already fully indemnified. *Id.* We reversed, explaining why such a broad reading of *Mid-Continent* was at odds with foundational

---

[4] *See id.* at 777 ("Kinsel [insured] has no common law cause of action against Mid-Continent [underpaying insurer], nor does it have, after being fully indemnified, any contractual rights remaining against Mid-Continent. Because Kinsel has no rights to which Liberty Mutual [overpaying insurer] may be subrogated, Liberty Mutual has no right of reimbursement through subrogation.").

principles of Texas insurance law, *id.* at 307–08, as well as in conflict with later decisions of the Texas Supreme Court. *Id.* at 307 (citing *Tex. Health Ins. Risk Pool v. Sigmundik*, 315 S.W.3d 12 (Tex. 2010)).[5] In addition, we observed that the majority of district courts to have considered *Mid-Continent* had cabined it to its facts, and we cited with approval to Judge Rosenthal's "well-reasoned opinion," limiting *Mid-Continent* to those situations where the insurers (1) were co-primary insurers; (2) did not dispute that both covered the loss; and (3) were subject to pro rata clauses. *Id.* at 306 (citing *Emp'r's Ins. Co. of Wausau v. Penn-America Ins. Co.*, 705 F. Supp. 2d 696 (S.D. Tex. 2010)).

*Amerisure* compels the preliminary result here: *Mid-Continent* does not preclude Great American's contractual subrogation claim as a matter of law.[6] And although this is not the end of our inquiry—as we still must determine whether *Mid-Continent*'s holding, however narrow, applies—we find that after applying the criteria described by Judge Rosenthal and set out above, *Mid-Continent* is distinguishable and does not control here.

In *Mid-Continent*, both insurers acknowledged their duties to defend and indemnify the insured. 236 S.W.3d at 769. But here, as in *Amerisure*, one of the insurers [Colony] has denied that is has any obligation to provide coverage. In addition, *Mid-Continent* involved a reimbursement dispute between co-primary insurers. *Id.* at 772. But this case, like *Amerisure*, involves a claim between an excess carrier and a primary insurer. And, as we have already recognized elsewhere, *Mid-Continent* does not preclude subrogation claims by excess insurers, but rather, is limited to disputes between co-primary insurers. *See Nautilis Ins. Co. v. Pac. Emp'r Ins. Co.*, 303 F. App'x 201, 206 (5th Cir. 2008) (per curiam).

---

[5] In *Sigmundik*, the Texas Supreme Court allowed an insurer's subrogation claim to proceed even after the injured insured was fully indemnified. 315 S.W.3d at 14–15.

[6] Because the *Amerisure* court found that contractual subrogation was available, it did not reach the appellant's equitable subrogation claim. 611 F.3d at 302, 308.

Having concluded that *Mid-Continent* does not control Great American's contractual subrogation claim against Colony, we vacate the district court's Rule 12(b)(6) order that dismissed Great American's complaint in intervention.

## IV

For the foregoing reasons, we VACATE the district court's order granting summary judgment for Colony, as well as the district court's order dismissing Great American's complaint in intervention, and REMAND for further proceedings consistent with this opinion.