**STERLING EQUITIES, INC., Plaintiff,**

v.

**CHUBB CUSTOM INSURANCE COMPANY, Defendant.**

Civil Action No. H–10–4092.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 26, 2011.

J. Brantley Durrett, III, Attorney at Law, Houston, TX, for Plaintiff.

Kennetha W. Lucas, Christopher W. Martin, Martin Disiere et al., Houston, TX, Patrick M. Kemp, Martin, Disiere, Jefferson & Wisdom, L.L.P., Austin, TX, for Defendant.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Chubb Custom Insurance Company's Motion for Summary Judgment (Document No. 9). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## I. BACKGROUND

This case arises as the result of an insurance coverage dispute between Plaintiff Sterling Equities, Inc. ("Sterling") and Defendant Chubb Custom Insurance Company ("Chubb"). Chubb issued Sterling a commercial property insurance policy (the "Policy") with effective dates from May 1, 2008 to May 1, 2009. On September 13, 2008, Hurricane Ike struck Southeast Texas, causing damage to multiple apartment complexes owned by Sterling and insured under the Policy. Shortly thereafter, Sterling submitted a claim against the Policy for damages to all affected properties, including Champion Village Apartments located at 12811 Greenwood Forest in Houston, Texas (the "Greenwood Property"). Chubb assigned Sterling's claim a claim number 040508094305 (the "Original Claim"). Chubb also assigned its in-house adjuster, Mark Black ("Black"), to inspect Sterling's properties associated with the Original Claim. Subsequently, a dispute arose regarding the extent of coverage under the Policy and the amount of loss sustained by Sterling's properties, includ-

ing the amount of loss to the Greenwood Property.[1]

On July 28, 2009, the parties executed a Confidential Settlement and Release Agreement (the "Release") as to the amount payable for the Original Claim. According to the Release, Chubb agreed to pay Sterling a total of $515,509.00 for losses to three specifically named properties.[2] The Greenwood Property, however, was not named in the Release. In return, Sterling agreed to release Chubb from all liability associated with the Original Claim and covenanted not to make further claims for damage or loss as a result of events precipitated by Hurricane Ike.

In March of 2010, eight months after signing the Release, Sterling hired an independent adjuster to reinspect the loss to the Greenwood Property. Contrary to Black's estimate, Sterling's independent adjuster determined that Hurricane Ike caused damages to the Greenwood Property totaling $1,171,419.10.

On October 25, 2010, Sterling filed the present lawsuit alleging breach of contract and violations of the Texas Insurance Code. Alternatively, Sterling's suit seeks a declaration that the Release does not apply and prays for recovery for all actual, additional, and exemplary damages. Chubb answered the lawsuit and pled release and waiver as an affirmative defense. Chubb now moves for summary judgment contending there are no genuine issues of material fact because the Release extinguishes all causes of action and bars recovery for any and all loss or damage asserted by Sterling in this litigation. Sterling opposes summary judgment and contends that because the Release is ambagious, there are material fact issues as to whether the Release precludes recovery. Accordingly, the Court must determine whether summary judgment is warranted.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine issue for trial. *See also* FED.R.CIV.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**1.** According to Sterling, Black estimated that the damage to the Greenwood Property totaled $36,095.02, an amount well below the deductible on the property.

**2.** The properties named included: Premises 32: 10936 Meadow Glen Ln., Houston, Texas; Premises 34: 12023 Bissonnet St., Houston, Texas; and Premises 37: 9301 Dairy View Ln., Houston, Texas. *See* Chubb's Exhibit A, pp. 2–3.

Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir.1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence that may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir.1992).

### III. LAW & ANALYSIS

■ As the moving party, Chubb bears the initial burden of presenting the basis for its motion and the elements of the causes of action upon which Sterling will be unable to establish a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Chubb contends the parties' Release governs this case and precludes Sterling from recovery. Specifically, Chubb contends that: (1) the damages Sterling's independent adjuster uncovered during a reinspection of the Greenwood Property were the result of Hurricane Ike; (2) the Greenwood Property was part of the Original Claim for losses Sterling submitted against the Policy; and (3) because Sterling agreed to release Chubb of any an all liability to the Original Claim and for any damages precipitating from Hurricane Ike, Sterling cannot not now seek to hold Chubb liable for additional damages to the Greenwood Property.

In response, Sterling contends it is not precluded by the Release because the parties did not intend the Release to apply to the Greenwood Property. Sterling asserts that "[t]o effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released," and that "[g]eneral categorical releases are to be narrowly construed." Sterling explains that when Black inspected the Greenwood Property, he assigned the property an individual claim number, 08–01075. Sterling further explains that Black's individual claim number is different from the claim number Chubb assigned to the Original Claim (*i.e.*, 040508094305). Sterling contends that because the Release neither mentions the Greenwood Property nor Black's individual claim number, the Release does not bar Sterling's suit for damages to the Greenwood Property.

Sterling further contends, in the alternative, that the Release is ambiguous because it is open to more than one reasonable interpretation. According to Chubb, the Release encompasses all claims for damages and liability related to the Original Claim and that all future claims for damages precipitating from Hurricane Ike are barred. According to Sterling, the Release allows the possibility of recovery for damages to the Greenwood Property because neither the property itself nor Black's claim number associated with the adjustment of the property was specifically mentioned in the Release.

In reply, Chubb contends that Sterling's interpretation of the Release fails to consider the Release as a whole. Chubb notes that while the release states "[t]his settlement includes all coverages for the *specified premises* with claimed damages

as a result of Hurricane Ike," [3] Chubb contends this language does not limit the scope of the Release to the three specified premises. According to Chubb, this statement must be read in conjunction with other sections in the Release, which indicate that Sterling promised to release and discharge Chubb from certain defined claims and promised to refrain from making further claims under the Policy as a result of events precipitated by Hurricane Ike.

▮ Having considered the parties contentions, the Court is faced with the issue of whether the Release precludes Sterling from pursuing its lawsuit to recover damages to the Greenwood Property. Under Texas law, "a release surrenders legal rights or obligation between the parties to an agreement." *Dresser Indus., Inc. v. Page Petroleum, Inc., et al.,* 853 S.W.2d 505, 508 (Tex.1993) (citing *Cox v. Robison,* 105 Tex. 426, 150 S.W. 1149, 1155 (Tex.1912)). A release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Id.* (citing *Hart v. Traders & Gen. Ins. Co.,* 144 Tex. 146, 189 S.W.2d 493, 494 (1945)). In order to be effective, "the releasing instrument must 'mention' the claim to be released." *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991). Additionally, "an agreement not to sue can be construed as a release and may be properly pled as a defense." *Dicker v. Lomas & Nettleton Fin. Corp.,* 576 S.W.2d 672, 675 (Tex.Civ.App.-Texarkana 1978, writ ref'd n.r.e.).

▮ Further, under Texas law, releases are subject to the rules of contract interpretation. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990) (citing *Loy v.*

*Kuykendall,* 347 S.W.2d 726, 728 (Tex.Civ. App.-San Antonio 1961, writ ref'd n.r.e.) ("A release is a contract and the construction thereof is governed by the general rules relating to construction of contracts")). The Supreme Court of Texas has recognized that contract terms are given their plain, ordinary, and generally accepted meanings, and that a contract should be construed as a whole in an effort to give effect to all of its provisions. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005). Giving effect to all contractual provisions ensures that none will be rendered meaningless. *Tex. Indus., Inc. v. Factory Mut. Ins. Co.,* 486 F.3d 844, 846 (5th Cir.2007). If language is worded so that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and is construed as a matter of law. *Id.*

▮ Ambiguities may exist only if the contractual language is uncertain and doubtful or if it is susceptible to two or more reasonable interpretations. *Grimes v. Andrews,* 997 S.W.2d 877, 882 (Tex. App.-Waco 1999, no pet.). The fact that the parties offer differing interpretations of the contract, however, does not, of itself, create ambiguity. *Tex. Indus.,* 486 F.3d at 846. A determination of contractual ambiguity is a matter of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983).

Under the *RECITALS* section of the Release, paragraph 1 indicates that Sterling made a claim under the Policy for damages to its properties as a result of events precipitated by Hurricane Ike. The claim was identified by Chubb with claim number 040508094305, which the Court has in turn defined in this Order as the

3. Chubb's Exhibit No. A, p. 2 (emphasis added).

"Original Claim." There is no evidence that Sterling submitted any other claim for damages under the Policy. The *RECITALS* section further indicates in paragraph 5 that each party has taken the opportunity to review the Release, has consulted with and has been advised by their respective counsel, and understands and voluntarily agrees to be bound by the terms of the Release.

Under the *AFFIRMATIVE COVENANTS* section of the Release, paragraph 1 states that "[t]his settlement includes all coverages for the specified premises with claimed damages as a result of Hurricane Ike." Paragraph 1 goes on to list, and identify by address, three premises.[4] The Greenwood Property is not listed, and a plain reading of this section of the Release indicates the Greenwood Property is not included in the Release. Nevertheless, paragraph 2 of the *AFFIRMATIVE COVENANTS* section goes on to further shape the scope of the Release as follows:

> For the consideration set forth herein, Sterling Equities and Chubb Custom hereby agree *to and accept a full and complete mutual release and discharge of any and all claims, demands, obligations, actions, causes of action, agreements, contracts, losses, liabilities, costs incurred, expenditures, damages and causes of action for damages, and any other theory of recovery against each other, of whatever kind of nature, whether in law, equity or otherwise, whether known of unknown, whether suspected or unsuspected, and arising*

out of, flowing from or in any way connected with the loss(es) related to the [Original] Claim, **and** Sterling Equity affirmatively covenants not to make further claim for any loss or damage to real or personal property, or for loss of business income and extra expense, or for any other loss covered under any first party coverage provided by the Policy as a result of events precipitated by Hurricane Ike.[5]

This language contains two main clauses separated by the conjunctive "and." The first clause is a broad mutual release and discharge of all liability or claims *"arising out of, flowing from or in any way connected with the loss(es) related to the [Original] Claim."* The second clause is a covenant whereby Sterling promises *"not to make further claim for any loss or damage to real ... property ... or for any other loss covered under any first party coverage provided by the Policy as a result of events precipitated by Hurricane Ike."* The Court finds that these two clauses can be given a definite legal interpretation and that they are dispositive on the issue of whether the Release precludes Sterling's suit.

First, it is undisputed that the Greenwood Property was one of Sterling's many properties covered under the Policy. Chubb's summary judgment evidence indicates that the Greenwood Property was also part of Sterling's Original Claim submitted against the Policy.[6] The Release is

4. Premises 32: 10936 Meadow Glen Ln., Houston, Texas; Premises 34: 12023 Bissonnet St., Houston, Texas; and Premises 37: 9301 Dairy View Ln., Houston, Texas. *See* Chubb's Exhibit A, pp. 2–3.

5. Chubb's Exhibit No. A, pp. 3–4 (emphasis added).

6. Chubb's summary judgment includes the declaration of Terry Hansel, Chubb's Assis-

tant Vice President and Property Technical Supervisor. *See* Chubb's Exhibit No. B. Hansel states in his declaration that the Greenwood Property was part of Sterling's Original Claim but that the damages to the property did not exceed the applicable deductible. Sterling argues, however, that the Greenwood Property was not included in the Original Claim because Black assigned the Greenwood Property an individual claim number that is

clear that the claims Sterling agreed to release are those *"arising out of, flowing from or in any way connected with the loss(es) related to the [Original] Claim,"* which includes the Greenwood Property. Sterling's claims for breach of contract and violations of the Texas Insurance Code seek damages that arise out of, flow from, or are connected with the Original Claim. Accordingly, those claims are barred by the plain language of the Release.

Second, it is undisputed that Sterling's independent adjuster conducted an investigation eight months after the execution of the Release, and that the independent adjuster had determined Hurricane Ike caused damages to the Greenwood Property totaling $1,171,419.10. By suing Chubb for breach of contract and for violations of the Texas Insurance Code, Sterling seeks to recoup *"loss or damage to real ... property ... as a result of events precipitated by Hurricane Ike,"* which is exactly what Sterling covenanted not to do in the Release. Thus, the Court finds that the Release bars Sterling's suit.

Construing the Release as a whole, the Court finds the Release broadly releases Chubb from liability and damages with respect to the Original Claim, which includes the Greenwood Property. Accordingly, Sterling is precluded from pursuing its present causes of action, and Chubb is entitled to summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

ORDERS that Chubb Custom Insurance Company's Motion for Summary Judgment (Document No. 9) is GRANTED.

This is a FINAL JUDGMENT.

different from the claim number Chubb assigned to the Original Claim. The Court finds this argument unpersuasive. When conducting loss and damage adjustments, Black utilizes a computer software called Marshall & Swift/Boeckh, which automatically generates what the software refers to as a "claim number." In the case of the Greenwood Property, Black's software generated claim number 08–01075. According to Black's declaration, this number is different than the claim number Chubb assigned to the Original Claim under which the Greenwood Property was adjusted. Based on Chubb's summary judgment evidence, the Court finds the Greenwood Property was included in the Original Claim.